UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
REINA LICHTMAN,

                         Plaintiff,                   **OPINION & ORDER**

   - against -                                     18-CV-10960 (CS)

CHASE BANK USA, N.A.,

                         Defendant.
-----------------------------------------------------------------

Appearances:

David Force
Stein Saks PLLC
Hackensack, New Jersey
*Counsel for Plaintiff*

Christopher B. Turcotte
The Law Office of Christopher B. Turcotte, P.C.
New York, New York
*Counsel for Defendant*

Seibel, J

      Before the Court is the motion for summary judgment of Defendant Chase Bank USA, N.A. ("Chase"). (Doc. 77.) For the following reasons, the motion is GRANTED.

**I.    BACKGROUND**

      **A.    Facts**

      The following facts are based on the parties' Local Civil Rule 56.1 statements, responses, and supporting materials, and are undisputed except as noted.[1]

---

[1] Plaintiff includes that she "lacks the knowledge to Admit or Deny the statement" in her response to every paragraph in Chase's statement of undisputed material facts. (*See* Doc. 88-1 ¶¶ 1-13.) A properly asserted fact is not considered disputed if a party states that it does not have knowledge sufficient to respond to the opposing party's asserted statement of material fact. *See* Local Civ. R. 56.1(c) (each paragraph in a Rule 56.1 Statement "will be deemed to be admitted . . . unless specifically controverted"); *Walker v. City of N.Y.*, 63 F. Supp. 3d 301, 306

In 2008, Plaintiff Reina Lichtman opened a Chase credit card account.  (Doc. 80 ("D's 56.1 Stmt.") ¶ 1.)  The cardmember agreement stated, among other things, that Chase "'may report information about you and your Account to credit reporting agencies.'"  (*Id.* ¶ 2 (quoting Doc. 79 ("Rivera Decl.") Ex. 1 at 3).)  Each of Plaintiff's monthly account statements similarly stated, "'We may report information about your account to credit bureaus.  Late payments, missed payments or other defaults on your account may be reflected in your credit report.'"  (*Id.* (quoting Rivera Decl. Ex. 2 at CHASE-000008).)

In April 2010, Plaintiff enrolled in Chase's Balance Liquidation Program ("BLP"), which provided her the opportunity to eliminate her account balance through monthly payments of $126 for sixty months at 6% annual interest.  (*Id.* ¶ 5.)  The letter memorializing the BLP's terms provided that Plaintiff would be removed from the program if she missed two consecutive payments or five payments total.  (*Id.*)  Plaintiff went on to miss seven monthly payments and was removed from the program in September 2012 after her second consecutive missed payment.  (*Id.* ¶ 6.)[2]  At this point, Chase was reporting her account to credit reporting agencies Trans

---

n.4 (E.D.N.Y. 2014) (collecting cases), *aff'd* 621 F. App'x 74 (2d Cir. 2015) (summary order). Plaintiff had the opportunity to take discovery, and any properly supported facts in Chase's 56.1 Statement that Plaintiff failed to properly address are deemed undisputed.  *See* Fed. R. Civ. P. 56(e)(2); *see also Scaprinato v. 1770 Inn, LLC*, No. 13-CV-955, 2015 WL 4751656, at *2 n.3 (E.D.N.Y. Aug. 11, 2015) (response that plaintiff "'denies possessing knowledge or information sufficient to form a belief as to the truth or the veracity'" is "flatly inappropriate" after discovery has concluded).

Plaintiff also failed to comply with item 2.C.i of my Individual Practices, which requires the opposing party to reproduce each entry in the moving party's Rule 56.1 Statement before setting out its response thereto.  Plaintiff's failure to do so defeats the purpose of this individual practice, which is designed to obviate the need to go back and forth between the Rule 56.1 Statement and the response.

[2] Specifically, Plaintiff missed payments in July 2010, November 2010, February 2011, September 2011, December 2011, August 2012, and September 2012.  (D's 56.1 Stmt. ¶ 6.)

Union, LLC ("Trans Union") and Equifax Information Services, LLC ("Equifax") as thirty days past due. (*Id.* ¶ 8.)

In October 2012, Plaintiff enrolled in a second BLP with Chase in which she could eliminate her balance through monthly payments of $113 for thirty-one months at 0% annual interest. (*Id.* ¶ 9.) This new BLP included a provisional credit of $921.35 that would become permanent only when Plaintiff completed the program. (*See* Rivera Decl. Ex. 9 at CHASE-000273.) If Plaintiff missed two consecutive payments or five payments total, she would be removed from the program, her provisional credit would be reapplied to her account, and interest would be charged in accordance with the terms of her cardmember agreement. (*Id.*)

Plaintiff made her first three payments by their due dates in October, November, and December 2012. (D's 56.1 Stmt. ¶ 11.) Nevertheless, Chase continued to report her account as past due because she never made up for her prior payment shortfalls. (*See* Doc. 78-2 ("Trans Union Report"); Doc. 78-3 ("Equifax Report"); Doc. 81 ("D's Mem.") at 3 n.2). Chase was reporting her account as sixty days past due by December 2012 and ninety days past due by January 2013. (Trans Union Report; Equifax Report.)

Plaintiff missed payments in January, February, April, and July of 2013. (D's 56.1 Stmt. ¶¶ 11-12.) As a result, Chase continued to report her account as ninety days past due throughout 2013 and into 2014 (except for April and July 2013, when her account was reported as sixty days past due). (*Id.*; Trans Union Report; Equifax Report.) In August 2014, however, she made up for those four missed payments. (D's 56.1 Stmt. ¶ 12.) Thereafter, Chase began reporting her account as paid on time. (*See* Trans Union Report; Equifax Report.) Plaintiff missed another payment in January 2015 but finally completed her BLP payment obligations in May 2015. (D's 56.1 Stmt. ¶ 13.)

3

On or about June 27, 2018, Plaintiff notified Trans Union and Equifax that her credit report contained incorrect late-payment notations for her Chase account in the years 2012-2015. (*Id.* ¶ 3.) Plaintiff also complained to Chase directly in a letter postmarked July 9, which Chase received on July 12. (Rivera Decl. Ex. 11.) On July 16, Chase marked Plaintiff's account as disputed with the credit bureaus and began an investigation. (*See* Rivera Decl. ¶ 16; *id.* Ex. 12 at CHASE-000321-22; *id.* Ex. 13.)[3] Chase determined that the information it had provided to the credit bureaus was accurate and notified Plaintiff of the results of its investigation in a letter dated July 18. (*See* Rivera Decl. Ex. 12 at CHASE-000319-22; *id.* Ex. 13; *id.* Ex. 14.) That same day, Chase removed the "disputed" notations it had placed with the credit bureaus regarding Plaintiff's account. (*See* Rivera Decl. ¶ 16; *id.* Ex. 12 at CHASE-000320; *id.* Ex. 13 at CHASE-000378.)

### B. Procedural History

Plaintiff brought this action against Chase, Trans Union, and Equifax, alleging violations of the Fair Credit Reporting Act ("FCRA"). (*See* Doc. 1 ("Complaint") ¶¶ 39-89.)[4] According to the Complaint, the information Chase furnished "is inaccurate as it lists varying late payment notations for the period of April 2012 through August 2015 despite Plaintiff having been entered into and complied with a rehabilitation payment program during this time period in order to

---

[3] Exhibits 12 and 13 to the Rivera Declaration are excerpted account notes and an archived events spreadsheet from Plaintiff's Chase account; both were filed under seal because they identify Plaintiff's private or confidential financial information and details about Chase's software, record-keeping and operations procedures, and coding that are proprietary, commercially sensitive, and confidential. (*See* Doc. 83 ¶ 4; Doc. 84.)

[4] Plaintiff's claims against Trans Union and Equifax were dismissed with prejudice by joint stipulation. (Docs. 74, 76.) Plaintiff's Complaint also includes unrelated FCRA claims against Hudson Valley Federal Credit Union, (*see* Complaint ¶¶ 90-112), which were likewise dismissed with prejudice by joint stipulation, (Doc. 69).

4

bring her account current." (*Id.* ¶ 16.)[5]  Plaintiff alleges that Chase violated the FCRA by willfully or negligently failing to conduct a reasonable investigation and continuing to report false and inaccurate adverse information regarding her account. (*Id.* ¶¶ 20, 72-73.)  She also alleges that "Chase failed to mark the account as disputed despite receiving the dispute letter from Plaintiff." (*Id.* ¶ 21; *accord id.* ¶¶ 74, 86.)

Prior to the close of discovery, Chase filed a pre-motion letter in anticipation of its motion for summary judgment. (Doc. 59.)  Plaintiff filed a response letter, (Doc. 73), the Court held a pre-motion conference, (Minute Entry dated July 10, 2019), and the instant motion followed.

## II.     LEGAL STANDARDS

### A.     Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d

---

[5] Plaintiff has since narrowed the dates at issue to the period from December 2012 to August 2014. (*See* Doc. 88 ("P's Opp.") at 5, 9.)

Cir. 2008). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). Where a declaration is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." *Id.* 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

### B.   FCRA

"The FCRA places distinct obligations on three types of entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies." *O'Diah v. New York City*, No. 02-CV-274, 2002 WL 1941179, at *12 (S.D.N.Y. Aug. 21, 2002). "Furnishers of information are entities that transmit, to credit reporting

agencies, information relating to debts owed by consumers." *Kane v. Guar. Residential Lending, Inc.*, No. 04-CV-4847, 2005 WL 1153623, at *3 (E.D.N.Y. May 16, 2005).  Here, there is no dispute that Chase is a furnisher under the FCRA.

The FCRA places two sets of obligations on furnishers.  First, under 15 U.S.C. § 1681s-2(a), the FCRA imposes a duty to "provide accurate information" to consumer reporting agencies.  This obligation prohibits a furnisher from reporting information that it knows or has reasonable cause to believe is inaccurate.  *See* 15 U.S.C. § 1681s-2(a)(1)(A).  It also prohibits a furnisher from reporting information that is, in fact, inaccurate if the consumer has notified the furnisher that the information is inaccurate.  *See id.* § 1681s-2(a)(1)(B).  In such instances, the furnisher "may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer."  *Id.* § 1681s-2(a)(3).  There is, however, no private right of action to enforce violations of § 1681s-2(a).  *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) (*per curiam*); *Redhead v. Winston & Winston, PC.*, No. 01-CV-11475, 2002 WL 31106934, at *4 (S.D.N.Y. Sept. 20, 2002) (collecting cases).  Instead, the FCRA provides that § 1681s-2(a) shall be enforced exclusively by government agencies and officials.  *See* 15 U.S.C. § 1681s-2(d).

Second, under § 1681s-2(b), after the furnisher receives notice of a dispute with regard to the completeness or accuracy of any information provided to a consumer reporting agency, the furnisher must, among other things, (1) conduct an investigation with respect to the disputed information, including a review of the information provided by the consumer reporting agency; (2) report the results of the investigation to the consumer reporting agency; and (3) take corrective steps if the information is inaccurate, incomplete, or impossible to verify.  *See* 15 U.S.C. § 1681s-2(b)(1); *Anthony v. GE Capital Retail Bank*, 321 F. Supp. 3d 469, 477 (S.D.N.Y.

2017). For § 1681s-2(b) to apply, the notice of dispute must originate from a consumer reporting agency. *Howard v. Mun. Credit Union*, No. 05-CV-7488, 2008 WL 782760, at *8 (S.D.N.Y. Mar. 25, 2008) (collecting cases).[6] Private plaintiffs may bring an action for willful or negligent noncompliance with § 1681s-2(b). *Neblett v. Chase Bank*, No. 09-CV-10574, 2010 WL 3766762, at *5 (S.D.N.Y. Sept. 27, 2010); *see* 15 U.S.C. § 1681n (willful noncompliance); *id.* § 1681o (negligent noncompliance).

## III. DISCUSSION

Chase argues that it is entitled to summary judgment on two grounds: First, it contends that Plaintiff has not shown that the late-payment notations on her Chase account were inaccurate. (*See* D's Mem. at 11-13.) Second, it argues that based on the undisputed facts and as a matter of law, Plaintiff cannot maintain a cause of action against Chase for failing to mark her account as disputed or not continuing to mark her account as disputed following Chase's investigation. (*See id.* at 13-16; Doc. 89 at 5-10.)

### A. Whether Chase Furnished Inaccurate Credit Information

A prerequisite for any FCRA claim is that the challenged credit information is incomplete or inaccurate. *See Matheson v. Ocwen Fed. Bank FSB*, No. 05-CV-2747, 2008 WL 11413560, at *8 (E.D.N.Y. June 18, 2008), *appeal dismissed*, 367 F. App'x 193 (2d Cir. 2010) (summary order). "'[A] credit entry may be "inaccurate" within the meaning of the statute either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Fitzgerald v. Chase Home Fin., LLC*, No. 10-CV-4148, 2011 WL 9195046, at *10 (S.D.N.Y. Feb. 28, 2011) (quoting *Sepulvado v. CSC*

---

[6] Plaintiff alleges, "It is believed and therefore averred that Defendants Trans Union and Equifax notified Defendant Chase of Plaintiff's dispute." (Complaint ¶ 19.) As Chase does not contest whether it received notice of the dispute from Trans Union or Equifax, the Court assumes that Chase received such notice for the purposes of this motion.

8

*Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998)). Here, Plaintiff maintains that Chase furnished "patently incorrect" information by reporting late-payment notations on Plaintiff's account from December 2012 to August 2014, (P's Opp. at 5, 9); she does not argue that the information is incomplete or misleading.[7] Chase contends that it is entitled to summary judgment because there is no genuine dispute of material fact that the late-payment notations on Plaintiff's account were accurate. (*See* D's Mem. at 11-13.)

As an initial matter, there is no genuine dispute that Plaintiff's account was accurately reported as past due for most of the contested period (December 2012 through August 2014) due to Plaintiff's missed payments in January, February, April, and July of 2013. (*See* D's 56.1 Stmt. ¶¶ 11-12.) But Chase was reporting her account as sixty days past due by December 2012 and ninety days past due by January 2013, before she missed her first payment under the second BLP. (*See* Trans Union Report; Equifax Report.) Chase maintains that these late-payment notations are accurate even though Plaintiff had yet to miss a payment under the second BLP because her payments in October, November, and December 2012 never made up for her missed

---

[7] In her opposition to Chase's motion for summary judgment, Plaintiff claims – for the first time – that Chase violated the FCRA by failing to report that Plaintiff's account was in a repayment program. (*See* P's Mem. at 10-11.) Neither Plaintiff's dispute letter nor her Complaint mentions that Chase failed to report that she was in a repayment program. (*See* Rivera Decl. Ex. 11 at CHASE-000288 (disputing the "payment history" and "dates [Chase was] reporting to the bureaus"); *see, e.g.*, Complaint ¶ 18 (Plaintiff "was disputing the incorrect late payments").) It is well established that "it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment." *Wilson v. City of N.Y.*, 480 F. App'x 592, 594 (2d Cir. 2012) (summary order) (internal quotation marks omitted). District courts are fully justified in declining to consider such allegations. *See Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006). Because Plaintiff's Complaint does not allege that Chase violated the FCRA by failing to report that Plaintiff's account was in a repayment program, I decline to consider this claim for the first time on summary judgment. *See Arnold v. Northland Grp., Inc.*, No. 18-CV-205, 2019 WL 2419470, at *4 (S.D.N.Y. June 10, 2019) (declining to consider theory of FCRA liability not raised in complaint and mentioned for first time in opposition to summary judgment motion).

payments in August and September 2012.  (*See* D's Mem. at 3 n.2.)[8]  In response, Plaintiff argues that it was "patently incorrect" for Chase to report delinquencies that preceded the second BLP because the "old agreement . . . had been materially altered to lower the minimum monthly payment" and therefore "Chase was prohibited from reporting . . . delinquencies carried over from the original agreement."  (P's Opp. at 5-6.)

The undisputed facts show that no such prohibition existed.  *See Nycal Corp. v. Inoco PLC*, 988 F. Supp. 296, 299 (S.D.N.Y. 1997) ("[S]ummary judgment is appropriate in a contract interpretation dispute whenever there is no genuine issue of fact . . . ."), *aff'd*, 166 F.3d 1201 (2d Cir. 1998).  Plaintiff's cardmember agreement and account statements explicitly state that Chase may report account information to credit bureaus, and the account statements listed "missed payments" as an example of information that may be reported.  (*See* D's 56.1 Stmt. ¶ 2.)  And neither BLP letter contains any terms prohibiting Chase from reporting Plaintiff's prior missed payments to credit bureaus.  (*See* Rivera Decl. Exs. 8-9.)[9]  There is no evidence that Chase

---

[8] There is a hole in Chase's logic that neither party addresses:  If Chase was reporting Plaintiff's account as sixty days past due by December 2012 and ninety days past due by January 2013 because of her missed payments in August and September 2012, then why did Chase begin reporting her account as paid on time after August 2014, when Plaintiff made up only for missed payments in January, February, April, and July of 2013, and why was her account reported as only sixty days past due in April and July 2013?  (*See* Trans Union Report; Equifax Report.)  Plaintiff, however, has not raised these questions – wisely, given that Chase appears to have been more forgiving than it needed to be – and does not contend that Chase violated the FCRA either by reporting her account as paid on time after August 2014 or by reporting her account as only sixty days past due rather than ninety in April and July 2013.  The Court declines to consider the questions *sua sponte*.  *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) (under the adversarial system, "courts are generally limited to addressing the claims and arguments advanced by the parties" and "do not usually raise claims or arguments on their own").

[9] The only provision that even mentions reporting states, "If you default from the program and stop making payments on this account, this account will be written off as bad debt to comply with regulatory guidelines and will be reported to the credit reporting agencies as 'charged off,' which could affect your credit rating."  (Rivera Decl. Ex. 9 at CHASE-000274.)

10

agreed to report Plaintiff's account as paid on time once she made her first payment under the second BLP. Additionally, under the second BLP's terms, Plaintiff's responsibility for her prior missed payments would not end until she completed the program and her provisional credit of $921.35 was made permanent. (*See id.* Ex. 9.)

Nevertheless, Plaintiff argues that "the material terms of the original credit agreement had been renegotiated and effectively revoked during the pendency of the second BLP" and that because the minimum monthly payment amount had been renegotiated, "the older minimum monthly payment term simply no longer applied." (P's Opp. at 5-6.) But, as Plaintiff recognizes, "the second BLP had modified the terms of the original agreement principally with regard to the minimum monthly payments at issue." (*Id.* at 5 n.1.) It did not modify what information Chase would report to credit bureaus. And while it is true that the second BLP lowered the amount of Plaintiff's minimum monthly payments, it does not follow that this absolved Plaintiff of her prior failures to make any payment whatsoever in previous months.

Plaintiff acknowledges that the BLP letters are silent as to whether Chase was prohibited from reporting missed payments that preceded the second BLP, but she argues that, "[i]n light of the overall intent of the agreement," it was "an implied term of the contract." (*Id.* at 6-7.) Implied terms are those that the parties "must have intended," are necessarily involved in the contractual relationship, or are indispensable to effectuate the intention of the parties. *Dobson v. Hartford Fin. Servs. Grp., Inc.*, 389 F.3d 386, 399 (2d Cir. 2004) (internal quotation marks omitted). The stated purpose of the second BLP was to "help [Plaintiff] manage [her] credit card balance." (Rivera Decl. Ex. 9 at CHASE-000273.) Chase afforded Plaintiff an opportunity to eliminate her balance within thirty-one months by lowering her annual interest to 0%, reducing her minimum monthly payment to $113, and applying a $921.35 credit to her account that would

11

become permanent once she completed the program.  (*Id.*)  How Chase reported Plaintiff's prior missed payments is not involved in this agreement at all, nor is it indispensable to effectuate the intention of the parties, which Plaintiff herself describes as "allowing [Plaintiff] to pay off her debt on more manageable terms."  (P's Opp. at 7.)  Consequently, and contrary to Plaintiff's assertions, (*see id.* at 7 nn.2-3), the purpose of the second BLP would not have been undermined if Chase were permitted to report past delinquencies, and its ability to do so does not plainly contravene the goal of the second BLP.

Plaintiff also asks, "Why else would she have entered into the second BLP if not to relieve herself of those prior obligations which she was clearly not up to?"  (*Id.* at 8.)  Plaintiff had several very good reasons for entering into the second BLP – namely, a lower annual interest rate, a smaller minimum monthly payment, and a $921.35 credit to her account.  Expunging her previous missed payments and considering her account current once she made her first payment under the second BLP were not part of the bargain.  Imposing such a term where none exists would not further the purposes of the FCRA – "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy," *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) – but rather would discourage creditors from offering payment plans to delinquent debtors.

The out-of-circuit cases that Plaintiff cites for support are distinguishable.  In those cases, the plaintiffs entered into loan-modification agreements and paid according to their terms, but the defendants effectively ignored the reduced payments and reported the accounts as past due, arguing that the modification agreements never took effect.  *See Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 625-26 (6th Cir. 2018); *Bradshaw v. BAC Home Loans Servicing, LP*, 816 F.

12

Supp. 2d 1066, 1070 (D. Or. 2011).  Neither case involved a plaintiff whose account was reported as past due because of missed payments that preceded the loan modification agreement.

There was simply no legal or contractual obstacle to Chase reporting the historical fact that Plaintiff had missed payments.  Accordingly, Chase has demonstrated that there is no genuine issue of material fact that the late-payment notations on Plaintiff's account (which form the basis of Chase's alleged FCRA violation) were accurate, and Chase is entitled to summary judgment on Plaintiff's claims that Chase violated the FCRA by continuing to report the late-payment notations on Plaintiff's account after being notified of her dispute.

### B.      Whether Chase Failed to Mark Plaintiff's Account as Disputed

In her Complaint, Plaintiff also alleges that Chase willfully or negligently violated the FCRA by failing to mark her account as disputed after receiving her dispute letter.  (Complaint ¶¶ 74, 86.)  Chase correctly argues that Plaintiff cannot maintain a cause of action on these claims for two reasons.  (*See* D's Mem. at 13-16.)

First, it is undisputed that Chase marked Plaintiff's account as disputed after receiving her dispute letter.  (*See* Rivera Decl. ¶ 16; *id.* Ex. 12 at CHASE-000322; *id.* Ex. 13 at CHASE-000377.)  Consequently, Chase has disproven the allegation that "Chase failed to mark the account as disputed despite receiving the dispute letter from Plaintiff."  (Complaint ¶ 21; *accord id.* ¶¶ 74, 86.)

Second, even if Chase had failed to mark Plaintiff's account as disputed in violation of 15 U.S.C. § 1681s-2(a)(3), no private cause of action exists for such a violation.  *See Volovnik v. Benzel-Busch Motor Car Corp.*, No. 09-CV-10595, 2010 WL 3629819, at *9 (S.D.N.Y. July 29, 2010) (no private right of action under 15 U.S.C. § 1681s-2(a)(3)), *report and recommendation adopted*, 2010 WL 3629815 (S.D.N.Y. Sept. 16, 2010); *Howard*, 2008 WL 782760, at *7 (duties imposed by 15 U.S.C. § 1681s-2(a) "are only enforceable by a government agency or official; no

13

private right of action is available under this provision"); *see also Longman*, 702 F.3d at 151 ("[T]here is no private cause of action for violations of § 1681s-2(a).").

In her opposition memorandum, Plaintiff abandons her allegation that Chase failed to mark the account as disputed and instead argues that Chase violated the FCRA because "it failed to note the fact that the account continued to be in dispute after Chase's investigation was performed." (P's Opp. at 11.) She cites two out-of-circuit district court decisions for the proposition that an FCRA violation can arise from the failure to note that a consumer continues to dispute account information after an investigation has been conducted, (*id.* at 12), and she cites decisions from the Third, Fourth, Sixth, Ninth, and Tenth Circuits for the general proposition that a plaintiff can state a cause of action under § 1681s-2(b) for failure to report an account as disputed, (*id.* at 15-16).

Even if Plaintiff's claim that "Chase failed to mark the account as disputed" encompassed the claim that Chase failed to *continue* to mark the account as disputed after its investigation, and even if the Court were to adopt in these circumstances the out-of-circuit rule recognizing a cause of action under § 1681s-2(b) for failure to report an account as disputed, Plaintiff would not benefit from that rule because, as explained above, Chase has demonstrated on summary judgment that there was no meritorious dispute to report.

All the cases that Plaintiff cites premise their holdings on the plaintiff having a meritorious or *bona fide* dispute. *See Wood v. Credit One Bank*, 277 F. Supp. 3d 821, 848-55 (E.D. Va. 2017) (marking disputes as resolved when plaintiff continued to dispute credit information was misleading under circumstances in which there was no genuine dispute of material fact that defendant reported inaccurate information and failed to conduct a reasonable investigation); *see also Seamans v. Temple Univ.*, 744 F.3d 853, 866-67 (3d Cir. 2014) (finding

private cause of action under § 1681s-2(b) for failing to report that claim is disputed where defendant appeared to have provided incomplete and inaccurate account information); *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 618 (6th Cir. 2012) (observing that "the Fourth and Ninth Circuits have recognized that a furnisher violates § 1681s-2(b)(1)(D) if it fails to identify that a consumer disputes his information, at least where the consumer's dispute is a *bona fide* dispute") (internal quotation marks omitted); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) ("[A] furnisher does not report 'incomplete or inaccurate' information within the meaning of § 1681s-2(b) simply by failing to report a meritless dispute, because reporting an actual debt without noting that it is disputed is unlikely to be materially misleading."); *Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 152 (4th Cir. 2008) ("[W]e assume without deciding that a furnisher incurs liability under § 1681s-2(b) only if it fails to report a meritorious dispute.").[10]

The case that comes closest to supporting Plaintiff's position is *Gissler v. Pennsylvania Higher Education Assistance Agency*, No. 16-CV-1673, 2017 WL 4297344 (D. Colo. Sept. 28, 2017), where the court declined to grant summary judgment on the issue of liability for failing to continue reporting that an account was disputed – even though the court previously noted that there was no reason to conclude that the reported information was inaccurate or incomplete. 2017 WL 4297344, at *3-5. But this observation regarding the accuracy of the information was made while the court was considering whether the defendant's investigation had been reasonable; the court did not explicitly rule, as this Court rules today, that the defendant was

---

[10] In one of the cases Plaintiff cites, the defendants failed to provide argument on this issue. *See Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1186 (10th Cir. 2013) ("Defendants did not provide any argument on whether their reporting of Plaintiff's non-payment of the loan without any mention of Plaintiff's dispute created a materially misleading impression. On this record, we cannot conclude . . . Defendants are entitled to summary judgment.").

15

entitled to summary judgment regarding whether it had reported inaccurate information.  *See id.*[11]  Moreover, the court in *Gissler* found it potentially misleading that the furnisher, after its investigation, coded the account as "'previously in dispute,'" *id.* at *3, "without noting plaintiff's continuing dispute of the accuracy of the reporting," *id.* at *5.  Here, unlike in *Gissler*, Chase did not affirmatively represent or suggest that Plaintiff had backed off her position; it merely complied with its obligation to investigate and withdrew the "disputed" notation from Plaintiff's account once it had determined that it had no obligation to take corrective steps because the disputed information was, in fact, accurate.[12]  The Court is not persuaded that Chase's failure to continue to report Plaintiff's account as disputed can be misleading by itself when Plaintiff has failed to show a genuine dispute of material fact that the disputed information is inaccurate in the first place.

Accordingly, Chase is entitled to summary judgment on Plaintiff's claims that it willfully or negligently violated the FCRA by failing to mark Plaintiff's account as disputed or not continuing to mark Plaintiff's account as disputed following its investigation.

---

[11] As explained above, a credit entry is inaccurate if it is patently incorrect or if it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions. Here, Plaintiff has unsuccessfully argued that Chase reported patently incorrect information, and she does not argue that the information is misleading.

[12] *Gissler* actually supports Chase's position in that it recognizes that a furnisher has no "legal obligation, after granting plaintiff a forbearance, not to continue reporting the historical fact that plaintiff did not make certain loan payments."  2017 WL 4297344, at *4.

## IV. CONCLUSION

For the reasons set forth above, Chase's motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 77), enter judgment for Chase Bank USA, N.A., and close the case.

**SO ORDERED.**

Dated: April 27, 2020
      White Plains, New York

                                              *Cathy Seibel*
                                       CATHY SEIBEL, U.S.D.J.